**In re Daniel W. HENKEL, Debtor.**

**Nicholas Yust, Plaintiff**

v.

**Daniel W. Henkel, Defendant.**

**Daniel W. Henkel, Counter–Claimant**

v.

**Nicholas Yust, Counter–Defendant.**

Bankruptcy No. 11–15578.

Adversary No. 11–01215.

United States Bankruptcy Court, S.D. Ohio, Western Division.

April 19, 2013.

Stacy A. Cole, Jeffrey Joseph Hanneken, Zachary D. Prendergast, Graydon

Head & Ritchey LLP, Cincinnati, OH, Plaintiff/Counter–Defendant.

Reuel D. Ash, Ulmer & Berne, LLP, Cincinnati, OH, for Defendant, Counter–Claimant.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BETH A. BUCHANAN, Bankruptcy Judge.

Prior to the petition date, the creditor obtained a default judgment in state court against the debtor's company for breach of contract and against the debtor and his company for fraud related to a construction contract. The debtor appealed the entry of the default judgment to the state appellate court, which court affirmed the judgment. The creditor filed this adversary proceeding seeking a determination that the default judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) and (6).

In connection with his answer to the non-dischargeability complaint, the debtor filed counterclaims against the creditor for breach of contract and unjust enrichment. The creditor asks this court to dismiss the debtor's counterclaims for breach of contract and unjust enrichment on the basis that the debtor had an opportunity to raise these claims as part of the state court action but failed to do so; therefore, the debtor is now precluded from doing so in this non-dischargeability action. The creditor further seeks summary judgment on his § 523(a)(2) claim on the grounds that the debtor is precluded from relitigating the issue of fraud before this court based on the state court's finding of fraud in the default judgment.

This court finds that the debtor is precluded, under the doctrine of claim preclusion, from asserting the counterclaims in this non-dischargeability action because the default judgment is a final decision on the merits by the state court that involves the same parties and the same nucleus of facts and the debtor could have raised the counterclaims in the state court action. The creditor, however, is not entitled to summary judgment on his § 523(a)(2) claim under the doctrine of issue preclusion. While the default judgment satisfies three of the four requirements for issue preclusion, this court is unable to determine from the default judgment, in considering the state court record as a whole, the extent of the state court's finding of fraud or the amount of damages attributed to such fraud. Construing the facts in the light most favorable to the debtor, the creditor has failed to meet his burden to establish that the issue of fraud was actually and directly litigated in the state court to the degree of specificity needed to warrant summary judgment on the grounds of preclusion.

### I. *Background*

This matter is before this Court on Nicholas Yust's ("*Yust*") *Motion to Dismiss Counterclaims* [Docket Number 14] (the "*Motion to Dismiss*"), Daniel W. Henkel's (the "*Debtor*" or "*Henkel*") *Objection to Plaintiff's Motion to Dismiss Counterclaims* [Docket Number 17] and Yust's *Reply in Support of His Motion to Dismiss Counterclaims* [Docket Number 18].

Also before this Court is Yust's *Motion for Summary Judgment* [Docket Number 19] (the "*Motion for Summary Judgment*"), the Debtor's *Memorandum in Response* [Docket Number 21], Yust's *Reply Memorandum in Support* [Docket Number 23], Yust's *Notice of Filing Copy*

*of Judgment Entry Affirming State Court Judgment in Its Entirety and Supplemental Memorandum* [Docket Number 30] and Debtor's *Response to Plaintiff's Notice of Filing of Copy of Judgment Entry Affirming State Court Judgment* [Docket Number 31].

### A. *State Court Action*

The debt at issue in this adversary proceeding arose by way of a default judgment (the *"Default Judgment"*) issued by the Hamilton County, Ohio Court of Common Pleas (the *"State Court"* and the *"State Court Action"*) on May 20, 2011 stemming from a complaint (*"State Court Complaint"*) by Yust against the Debtor and the Debtor's business, Henkel Design–Build, Inc. (*"Henkel Design"*). In the State Court Complaint, Yust alleges that he and Henkel Design entered into a contract (the *"Contract"*) pursuant to which Henkel Design,[1] as the general contractor, was to make certain improvements to Yust's gallery and production facility for his metal art and sculpture business. The price agreed upon in the Contract was $172,500.00, to be financed by a construction loan obtained by Yust through Huntington National Bank (the *"Bank"*). Yust alleges that Henkel Design submitted four draw requests for approval and payment. The first three draw requests were paid from the construction loan in the aggregate amount of $69,404 but the fourth draw request, in the amount of $128,623, was rejected by the Bank.[2]

Issues arose during the course of the Contract, ultimately giving rise to the State Court Action. Specifically, Yust alleged in the State Court Complaint that Henkel Design failed to use commercially reasonable efforts to complete the construction project resulting in the project being behind schedule and coming in at a cost significantly in excess of the Contract budget. Yust further alleged that Henkel Design submitted fraudulent draw requests[3] to Yust and the Bank which, without limitation, misrepresented which subcontractors and materialmen invoices had been paid, misrepresented or inflated the amount of subcontractor invoices and included forged change orders. Yust further asserted in the State Court Complaint that the Debtor should be personally liable for the conduct of Henkel Design based on the Debtor's control over and use of Henkel Design to defraud Yust. Based on these assertions of fact, Yust asserted causes of action in the State Court Complaint for (1) piercing the corporate veil, (2) breach of contract, (3) breach of the duties of good faith and fair dealing, (4) fraud and intentional misrepresentation, (5) negligence, (6) unjust enrichment, (7) conversion, (8) indemnity and (9) punitive damages as bases for relief.

---

**1.** The Contract expressly states that Yust and the Debtor (individually) are the parties to the Contract, not Henkel Design.

**2.** The State Court Complaint provides that Henkel Design submitted the following draw requests:

| Date | Amount |
| --- | --- |
| February 17, 2009 | $22,400 (*"First Draw Request"*) |
| July 21, 2009 | $32,428 (*"Second Draw Request"*) |
| September 3, 2009 | $14,826 (*"Third Draw Request"*) |
| December 11, 2009 | $128,623 (*"Fourth Draw Request"*) |

This Court notes that the first three draw requests total slightly more than the aggregate amount paid as alleged in the State Court Complaint.

**3.** Yust avers in the State Court Complaint that Henkel Design was required by the Contract to submit affidavits in support of each application for payment.

Yust filed the State Court Complaint on July 14, 2010. Based on the Debtor's failure to answer or otherwise respond to the State Court Complaint, Yust filed a motion for default judgment on November 10, 2010. Magistrate Michael Bachman (the *"Magistrate"*) set a hearing on the motion for default judgment for December 21, 2010 (the *"Default Judgment Hearing"*). The day prior to the Default Judgment Hearing, the Debtor filed *a pro se* motion for extension of time to respond to the motion for default judgment so that he could hire an attorney. The Default Judgment Hearing was held nonetheless, as scheduled, on December 21, 2010. Yust and his counsel appeared at the Default Judgment Hearing but the Debtor did not.

At the Default Judgment Hearing, the Magistrate found, after reviewing the record and questioning Yust and his counsel, that the Debtor was properly served with the State Court Complaint and summons on August 20, 2010 at the Zig Zag Road and Eagles Lake Drive, Cincinnati, Ohio addresses listed for service in the record. The Magistrate also heard testimony from Yust regarding his understanding of the business structure and operations of Henkel Design, the formation of the Contract, matters leading up to Yust's termination of the Contract, matters relating to alleged fraud in connection with certain draw requests and damages associated with completing the construction project.

As relates to the issue of fraud, Yust testified that Henkel Design falsely represented in connection with the first three draw requests submitted to and paid by the Bank that subcontractors had been paid when Yust later had to directly pay several of these same subcontractors for the work already performed. Yust also testified that his signature was forged on a $950 change order dated July 16, 2009 (the *"July 2009 Change Order"*), which was also signed by the Debtor as president of Henkel Design and submitted to the Bank for payment. Lastly, Yust testified regarding a $5,718 invoice from Bolton Bros. Concrete dated November 24, 2009 (the *"Bolton Bros. Invoice"*), which Henkel Design submitted as part of the Fourth Draw Request. Yust stated that the Bolton Bros. Invoice submitted with the draw request was inflated by approximately $1,000 when compared to the original Bolton Bros. Invoice provided to him by Bolton Bros. Concrete, which original invoice was dated the same date as the invoice submitted with the draw request but reflected an invoice amount of only $4,715.

The Magistrate admitted the following exhibits into evidence at the Default Judgment Hearing, which exhibits were introduced in connection with Yust's testimony: [4]

| Exhibit A | The Contract |
| --- | --- |
| Exhibit B | A January 5, 2009 e-mail from Henkel Design to Yust with a copy of the Contract attached |
| Exhibit C | The July 2009 Change Order |
| Exhibit D | The Bolton Bros. Invoice |
| Exhibit E | The original Bolton Bros. Invoice |

---

4. At the Default Judgment Hearing, Yust testified regarding certain out of pocket expenditures detailed in an affidavit that was filed as an exhibit to Yust's motion for default judgment. It is unclear from the transcript of the Default Judgment Hearing whether Yust's affidavit was admitted as an exhibit at the Default Judgment Hearing. In any regard, Yust's affidavit is not as part of the record before this Court.

On February 9, 2010, the Magistrate issued a decision granting Yust's motion for default judgment (the *"Magistrate's Decision"*), which provides in relevant part:

> The Court, having considered the pleadings, makes the following findings:
>
> 1. The Plaintiff and Defendant Henkel Design–Build, Inc. were parties to a contract for the construction of improvements at 3602 Eastern Avenue.
>
> 2. Defendant Henkel Design–Build, Inc. breached said contract and the Plaintiff properly terminated said contract.
>
> 3. Defendants Henkel Design–Build, Inc. and Defendant Daniel Henkel committed fraud by falsifying at least one draw request and one change order.
>
> 4. The actions of Defendants Henkel Design–Build, Inc. and Defendant Daniel Henkel demonstrate malice or aggravated or egregious fraud.
>
> 4. [sic] As a result of the breach of contract and the fraud, the Plaintiff has been damaged in the amount of $202,784.00.
>
> It is therefore ORDERED, ADJUDGED, AND DECREED that the Plaintiff's Motion for Default Judgment is GRANTED
>
> IT IS FURTHER ORDERED that the Plaintiff is granted judgment against Defendant Henkel Design–Build, Inc. and Daniel Henkel, jointly and severally, for compensatory damages of $202,784.00.
>
> IT IS FURTHER ORDERED that the Plaintiff is granted a judgment for its attorney fees and costs against Defendants Henkel Design–Build, Inc. and Daniel Henkel, jointly and severally, in the amount of $10,617.40.
>
> IT IS SO ORDERED.

On February 24, 2011, approximately two weeks after the entry of the Magistrate's Decision, the Debtor—who had by this time obtained counsel—filed both an objection to and a motion to dismiss and vacate the Magistrate's Decision. In support thereof, the Debtor asserted that the State Court lacked subject matter jurisdiction over the dispute since the Contract provided that all controversies relating to the Contract must be settled by arbitration. The Debtor further argued that the State Court lacked personal jurisdiction over him since he was not properly served with the State Court Complaint and summons. The Debtor filed an affidavit in support of his objection and motion to dismiss, which provides as follows regarding the issue of service:

> 2. The following facts are true and accurate to the best of my knowledge as they relate to Plaintiff's attempts to provide service on me.
>
> > a. Between the summer of 2009 and the fall of 2010, I was only intermittently residing at the Zig Zag Road location because of a divorce. During that timeframe, I also resided with my sister, Elizabeth Henkel, at 323 East Second Street, Covington, Kentucky 41011; and
> >
> > b. More particularly, between July 15 and July, 2010, I took a family vacation with my minor children and returned for four days to Cincinnati and then left the state of Ohio for a construction project in South Carolina between July 30, 2010 and August, 2010.
>
> * * *
>
> 4. I have never resided with my mother at 6251 Eagle Lake Drive, Cincinnati, Ohio 45248.

\* \* \*

6. My first notice of the lawsuit occurred on December 19, 2010 when I was assisting my 82–year old mother at her home following an extended hospitalization arising from a heart condition.

7. I proceeded to file a Motion for Extension of Time the next day, December 20, 2010 requesting an extension of approximately 70 days to respond to [sic] hearing on the Motion for Default Judgment. During that timeframe, I was resolving domestic relation issues with my first marriage. Those domestic relation issues were finally resolved on February 8, 2011.

After a hearing on March 28, 2011, Judge Steven E. Martin (the *"State Court Judge"*) overruled both the Debtor's objection and motion to dismiss by letter to counsel dated April 27, 2011. The State Court Judge concluded that the Debtor had not timely exercised his rights under the arbitration clause of the Contract and further found that the Debtor was properly served with the State Court Complaint based on the record. The State Court Judge subsequently entered the Default Judgment, which incorporated these findings and adopted the Magistrate's Decision.

The Debtor filed an appeal of the Default Judgment with the Court of Appeals for the First District of Ohio (the *"State Appellate Court"*) on June 22, 2011. The State Appellate Court issued an opinion affirming the Default Judgment on January 18, 2013.

### B. *Bankruptcy Case and Adversary Proceeding*

On September 13, 2011, the Debtor filed his Chapter 7 petition. Yust initiated this adversary proceeding against the Debtor on December 20, 2011 by way of a Complaint to Determine Dischargeability of Debt (the *"Bankruptcy Complaint"*), which substantially incorporates the facts alleged in the State Court Action. By the Bankruptcy Complaint, Yust seeks a determination that the debt adjudicated in the State Court Action is nondischargeable pursuant to § 523(a)(2), (4) and (6) of the United States Bankruptcy Code.[5] The Debtor filed a Motion to Dismiss the Bankruptcy Complaint, pursuant to Rules 9(b) and 12(b)(6)[6] of the Federal Rules of Civil Procedure (the *"Civil Rules"*), for failure to plead the § 523(a)(2) claim for fraud with particularity and failure to state a claim upon which relief may be granted with respect to the § 523(a)(4) and (6) claims. Yust filed an amended complaint on March 23, 2012 (the *"Amended Bankruptcy Complaint"*), rendering the Debtor's motion to dismiss moot. In his Amended Bankruptcy Complaint, Yust abandoned his claim for relief under § 523(a)(4), leaving only the claims for relief under § 523(a)(2) and (6).

In his Amended Bankruptcy Complaint, Yust focuses on three events that he asserts substantiate his claim that the Default Judgment is nondischargeable. The first relates to Yust's allegation that the Debtor forged Yust's signature on the July 2009 Change Order. The second relates to the Third Draw Request and Yust's allegation that the Debtor falsely represented to the Bank that all work covered by the

---

**5.** Unless otherwise indicated, the terms "Bankruptcy Code," "Section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

**6.** Civil Rules 9(b) and 12(b)(6) are made applicable to adversary proceedings pursuant to Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*).

Third Draw Request had been paid current, when in fact the Debtor failed to pay certain subcontractors and materialmen. The third event relates to the Bolton Bros. Invoice, which Yust alleges that the Debtor forged to inflate the amount payable in connection with the Fourth Draw Request.

The Debtor filed an answer to the Amended Bankruptcy Complaint on April 13, 2012, setting forth a variety of defenses and also asserting two counterclaims against Yust (the *"Counterclaims"*). The Debtor's first counterclaim is for breach of contract, alleging that Yust owes the Debtor an amount to be determined at trial under the Contract based on unpaid invoices, contractor fees as related to cost overruns, unbilled monies for labor and materials and appearances at zoning hearings and other meetings. The second counterclaim is for unjust enrichment. The Debtor seeks damages, a complete discharge of any alleged obligations owed to Yust, attorney fees and costs. Yust thereafter filed the Motion to Dismiss the Counterclaims and the Motion for Summary Judgment.

## II. *Jurisdiction*

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(C) and (I).

7. Civil Rule 12(b)(6) is made applicable to adversary proceedings pursuant to Bankruptcy Rule 7012(b).

8. Civil Rule 56(a) is made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056.

9. The Motion for Summary Judgment initially references both the § 523(a)(2) and (a)(6) counts of the Amended Bankruptcy Complaint, however, the body of the Motion for

## III. *Legal Analysis*

### A. *Motion To Dismiss Counterclaim/Motion For Summary Judgment*

Yust maintains that under the doctrine of *res judicata*, or claim preclusion, the Debtor's Counterclaims should be dismissed pursuant to Civil Rule 12(b)(6) [7] because the Debtor had an opportunity to raise these claims as part of the State Court Action and failed to do so.

Under the related doctrine of collateral estoppel, or issue preclusion, Yust asserts he is entitled to summary judgment pursuant to Civil Rule 56 [8] on the issue of non-dischargeability of the Default Judgment. Yust argues that the Debtor is precluded from relitigating the issue of fraud in this adversary proceeding because this Court is required to give preclusive effect to the State Court's prior finding of fraud. [9]

### B. *Standards Of Review*

#### 1. *Motion To Dismiss*

To survive a motion to dismiss pursuant to Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). The defendant bears the

Summary Judgment discusses only the § 523(a)(2) count. To the extent that Yust is seeking summary judgment regarding the § 523(a)(6) count, such request is hereby denied. *See Schramm v. TMS Mortgage, Inc. (In re Schramm)*, 2006 Bankr.LEXIS 4470, *15–16 (Bankr.N.D.Ohio 2006) (denying motion to dismiss as to certain counts where the argument relating to such counts was not fully developed in the motion to dismiss).

burden of demonstrating that the plaintiff has failed to state a claim for relief warranting dismissal under Civil Rule 12(b)(6). *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007).

### 2. *Motion For Summary Judgment*

Civil Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute exists only where "evidence is such that a reasonable [finder of fact] could return a [judgment] for the non-moving party." *See id.; Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263, 270 (6th Cir.2009). In reviewing a motion for summary judgment, this Court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 511 (6th Cir.2003).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As such, the summary judgment process should not be regarded "as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inex-

pensive determination of every action.'" *Id.* at 321, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 1).

### C. *The Doctrines Of Claim Preclusion And Issue Preclusion*

Pursuant to 28 U.S.C. § 1738, federal courts must give the same "full faith and credit" to a state court judgment as would be given that judgment under the law of the state in which it is rendered. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir.1999) (comparing claim preclusion and issue preclusion under Ohio law). "When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action." *Id.* (citations omitted). Thus, in order for the Default Judgment to carry preclusive weight in the instant adversary proceeding, "it must be entitled to such effect under Ohio's preclusionary principles." *Chandler v. Alexakis (In re Alexakis),* 2012 Bankr.LEXIS 4164, at *9 (Bankr.S.D.Ohio Sept. 6, 2012). The party seeking to invoke issue preclusion has the burden to establish its applicability. *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 572 (6th Cir.2008)(discussing claim preclusion); *Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski),* 393 B.R. 522, 535 (Bankr.S.D.Ohio 2008) (discussing issue preclusion).

"'Claim preclusion generally refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.'" *In re Fordu,* 201 F.3d at 703 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct.

892, 79 L.Ed.2d 56 (1984)). Under Ohio law, claim preclusion has four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir.1997) (citations omitted).

 In comparison, "[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided." *In re Fordu,* 201 F.3d at 703 (citing *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. 892). Under Ohio law, the doctrine of issue preclusion has four elements:

1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Sill v. Sweeney (In re Sweeney),* 276 B.R. 186, 189 (6th Cir. BAP 2002) (citations omitted).

██ While the two doctrines have separate requirements, each embodies the fundamental principle that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." *In re Fordu,* 201 F.3d at 703 (internal quotation marks and citations omitted). Both doctrines "serve the neces- sary function of conserving judicial and litigant resources and minimize the possibility of inconsistent decisions." *Id.* (citations omitted).

**D. Discussion**

**1. Motion To Dismiss (Claim Preclusion)**

 The first element of claim preclusion looks to whether there is a prior final decision on the merits. As to this element, it is well-settled law in Ohio that a default judgment carries the weight of a final decision on the merits that may serve to bar later claims. *See Frazier v. Matrix Acquisitions, LLC,* 873 F.Supp.2d 897, 901 (N.D.Ohio 2012) (collecting cases). The conclusive character of a default judgment—like any other final judgment—is not changed by a litigant's pursuit of its appellate rights. "It is well established that when a judgment has been vacated, reversed, or set aside on appeal, it is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *State v. Baron,* 156 Ohio App.3d 241, 249, 805 N.E.2d 173 (2004) (citing *Erebia v. Chrysler Plastic Prods. Corp.,* 891 F.2d 1212, 1215 (6th Cir.1989)). Until such time as a decision is made on appeal, however, a final judgment retains its preclusive effect. *Id.; see also Ashley v. Ashley,* 118 Ohio App. 155, 160, 193 N.E.2d 535 (1962) ("The pendency of an appeal does not necessarily prevent the application of the principle of *res judicata* because jurisdiction of the cause of action involving the adjudicated issue remains in the court of first instance which excludes jurisdiction of the court having before it the same issue in a second action.").

The Default Judgment in this case has not been vacated, reversed, or set aside on appeal; rather it was affirmed by the State Appellate Court. As such, the De-

fault Judgment is a final, valid decision on the merits by a court of competent jurisdiction and will remain such pending a determination on any further appeal of the judgment by the Debtor. Accordingly, Yust has established the first element of claim preclusion.

The second element of claim preclusion, which looks to whether the prior action and the subsequent action involve the same parties, is also met. Yust and the Debtor are parties in this adversary proceeding and were likewise parties in the State Court Action.

The third element of claim preclusion looks to whether the later action raises claims that were or could have been litigated in the first action. "The scope of claims covered by this prong is quite broad, [extending] not only [to] relitigation of a claim previously adjudicated; [but also to litigation of] a claim *or defense* that should have been raised, but was not, in the prior suit." *Frazier*, 873 F.Supp.2d at 902 (internal citations, quotation marks and alterations omitted) (emphasis in original). Yust argues that the Debtor's Counterclaims for breach of contract and unjust enrichment are claims that could have, and should have, been raised as counterclaims in the State Court Action.

Under Ohio law, a litigant is required to plead as a compulsory counterclaim any claim that arises out of the same "transaction or occurrence that is the subject matter of the opposing party's claim." Ohio R. Civ. P. 13(A); *see also Astar Abatement, Inc. v. Cincinnati City Sch. Dist. Bd. of Educ.*, 2012 U.S. Dist. LEXIS 18422, at *18, 2012 WL 481799, at *6 (S.D.Ohio Feb. 14, 2012) (citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995)). To determine whether a counterclaim arises from the same transaction or occurrence as the opposing party's claim, courts generally consider

whether the claims involve a "common nucleus of operative facts" or share the same legal issues such that there is a "logical relationship" between the claims. *Id.* (citations omitted). Failure to assert a compulsory counterclaim in a prior action bars a litigant from asserting such claim in subsequent litigation based on the doctrine of claim preclusion. *Id.* This same principle applies to actions in which a default judgment was entered against the party later seeking to raise a claim that should have been asserted in the prior litigation. *Id.* (citing *Broadway Management, Inc. v. Godale*, 55 Ohio App.2d 49, 378 N.E.2d 1072 (1977)).

The breach of contract and unjust enrichment claims that the Debtor raises as Counterclaims in this adversary proceeding directly relate to the Contract, which was likewise the subject of the State Court Action. There is a logical relationship between the Debtor's Counterclaims and the claims asserted by Yust in the State Court Action since they involve related factual and legal issues and each "seek[s] to redress the same basic wrong." *Id.* As such, it seems evident that the Debtor's Counterclaims qualify as compulsory counterclaims. The Debtor in fact admits as much. *See* Counterclaim, ¶¶ 2, 9 (stating that the Counterclaims arise from the same nucleus of operative facts as the Amended Bankruptcy Complaint and are compulsory counterclaims pursuant to Bankruptcy Rule 7013).

The Debtor nonetheless maintains that he could not have brought the Counterclaims in the State Court Action because he was not properly served with the State Court Complaint. The Debtor argues that defenses or issues—such as the Counterclaims—must be "actually litigated and determined in an earlier action and [be] necessary to the judgment" for the doctrine of

claim preclusion to apply. "This is not so, however, with claim preclusion. Claim preclusion depends only on whether the court entered final judgment, not whether the parties actually litigated a particular claim covered by that judgment." *Kline v. Mortgage Elec. Sec. Sys.,* 2011 U.S. Dist. LEXIS 30821, at *17–18, 2011 WL 1118485, at *6 (S.D.Ohio Feb. 16, 2011) (quoting *Harris–Gordon v. Mortgage Elecs. Registration Sys.,* 2010 U.S. Dist. LEXIS 106010, 2010 WL 3910167, at *2–3 (N.D.Ohio Oct. 4, 2010) (alterations omitted)). Accordingly, Yust has established the third element of claim preclusion.

Finally, the fourth element of claim preclusion, which requires that the second action arise out of the transaction or occurrence that was the subject matter of the previous action, is also satisfied. Both this adversary proceeding and the State Court Action relate to the parties' transactions arising out of the Contract.

For the foregoing reasons, this Court finds that the Debtor's Counterclaims are barred by the doctrine of claim preclusion. Accordingly, the Motion to Dismiss is GRANTED.

### 2. *Motion For Summary Judgment (Issue Preclusion)*

The issue in this adversary proceeding is whether the Debtor owes a nondischargeable debt to Yust pursuant to § 523(a)(2)(A) of the Bankruptcy Code for money obtained by false pretenses, false representations or actual fraud. In the State Court Action, Yust likewise alleged and the State Court held that the Debtor was liable to Yust for fraud under Ohio common law.

■■■■■ A finding of fraud under § 523(a)(2)(A) of the Bankruptcy Code requires proof of the following elements by a preponderance of the evidence:

(1) the debtor obtained money through a material misrepresentation, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280–81 (6th Cir.1998), *cert. denied,* 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998) (discussing the elements of false representation). In comparison, to prevail on a common law fraud claim under Ohio law, a plaintiff must prove the following elements by a preponderance of the evidence:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Passa v. City of Columbus,* 748 F.Supp.2d 804, 814 (S.D.Ohio 2010) (citing *Groob v. KeyBank,* 108 Ohio St.3d 348, 357, 843 N.E.2d 1170 (2006)) (additional citations omitted). Because the elements of the claim asserted in this adversary proceeding under § 523(a)(2)(A) of the Bankruptcy Code and the elements of the claim asserted in the State Court Action for fraud under Ohio law are virtually identical, Yust has established the third requirement for issue preclusion. *Ed Schory & Sons, Inc. v. Francis (In re Francis),* 226 B.R. 385, 389 (6th Cir. BAP 1998) (holding that "the bankruptcy court properly found that the elements of a dischargeability claim under 11 U.S.C. § 523(a)(2)(A) are virtually iden-

tical to the elements of a fraud claim in Ohio") (internal quotation marks omitted); *Sloan Dev., LLC v. Gill (In re Gill)*, 2012 Bankr.LEXIS 1133, at *7, 2012 WL 909513, at *4 (Bankr.N.D.Ohio 2012) (noting that "[t]he elements of a fraudulent misrepresentation claim under Ohio law mirror the elements that must be shown in order to prevail under § 523(a)(2)(A)"); *Ohio Bureau of Workers' Comp. v. Damron (In re Damron)*, 457 B.R. 662, 666 (Bankr.S.D.Ohio 2011) (noting that "[t]he elements of common law fraud in Ohio . . . are substantially equivalent to those required to establish a nondischargeable debt based on false representation under § 523(a)(2)(A)").[10]

With respect to the fourth element of issue preclusion—relating to the relationship between the parties in the prior action compared to the parties in the present action—the facts of this case clearly reflect that the Debtor was a party in the prior State Court Action as well as this adversary proceeding; therefore, Yust has established the fourth requirement for issue preclusion.

The first and second elements of issue preclusion, however, warrant more extensive examination.

**a. *"Final Judgment On The Merits" and "Full And Fair Opportunity To Litigate the Issue"***

■ To satisfy the first requirement for issue preclusion under Ohio law, there

must be a final judgment on the merits in a previous case after a full and fair opportunity to litigate the issue. *In re Sweeney*, 276 B.R. at 189. As was the case for purposes of claim preclusion, the Default Judgment also is considered a final judgment on the merits for purposes of issue preclusion. *See Wagner v. Schulte (In re Schulte)*, 385 B.R. 181, 190 (Bankr. S.D.Ohio 2008).

■ As to the latter requirement, the "full and fair opportunity to litigate" element of the issue preclusion doctrine "is rooted in due process concerns." *S. Atl. Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 553 (Bankr. N.D.Ohio 2006) (internal quotation marks and citations omitted) (analyzing Georgia law); *see also In re Sweeney*, 276 B.R. at 191 (discussing due process concerns regarding default judgments in the context of issue preclusion under Ohio law); *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200–01, 443 N.E.2d 978, 985 (1983) ("The main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and be 'heard' in the due process sense."). To trigger the "full faith and credit" statutory directive of 28 U.S.C. § 1738, "state proceedings need do no

---

**10.** The court in *Chandler v. Alexakis (In re Alexakis)* noted that while the elements of fraud under § 523(a)(2)(A) and Ohio law are substantially similar, there is an additional requirement under § 523(a)(2)(A) to make a "threshold showing that the debt at issue was 'obtained by' fraud. . . . Misrepresentations made subsequent to the creation of the debt have no effect upon dischargeability of a debt, since the false representation did not cause the creditor to part with money, property or services." 2012 Bankr. LEXIS 4164, at *16 (Bankr. S.D. Ohio Sept. 6, 2012) (citing *Aslak-*

*son v. Freese (In re Freese)*, 472 B.R. 907, 917–18 (Bankr.D.N.D.2012) (internal quotation marks omitted)). This Court notes that the Bolton Bros. Invoice was part of the Fourth Draw Request, which the Bank did not pay. To the extent that the State Court awarded damages relating to the Bolton Bros. Invoice, arguably such damages did not arise from a debt "obtained by" fraud. For the reasons subsequently discussed, however, this Court is unable to determine whether the State Court awarded fraud damages relating to this specific invoice.

more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).[11] As the Supreme Court has observed, "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause ... [Rather the] very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* at 483, 102 S.Ct. 1883 (internal quotation marks and citations omitted).

The Debtor argues that he did not have a full and fair opportunity to litigate the issue of fraud in the State Court Action because he was not properly served with the State Court Complaint. The Debtor looks to *In re Sweeney* as support for his position that this Court should convene an evidentiary hearing to independently examine the issue of service. *In re Sweeney*, however, is distinguishable from this case in two material respects. First, the debtor in *In re Sweeney* asserted that he "was completely ignorant of the [state court] litigation" until after the Default Judgment was entered. *In re Sweeney*, 276 B.R. at 189–90. In contrast, the Debtor in this case fully acknowledges that he had *actual* notice of the State Court Action prior to the Default Judgment Hearing. Indeed, the Debtor filed a *pro se* motion requesting an extension of time in which to respond to the motion for default judgment and to retain counsel. The Debtor's prior notice of the Default Judgment Hearing—and thereby notice of the existence of the State Court Action—supports a finding that the Debtor was afforded an opportunity to participate at the Default Judgment Hearing with respect to the determination of whether the Debtor was liable to Yust for fraud. *In re Lupo*, 353 B.R. at 553–54 (observing that "the key to [the] full and fair opportunity analysis is determining whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination" and concluding that this standard was satisfied where a default judgment against the debtor's corporation resulted from the debtor and his corporation's "own failure to act, not from a lack of opportunity to litigate the issue") (internal quotation marks and citations omitted); *State v. Foster (In re Foster)*, 280 B.R. 193, 206 (Bankr.S.D.Ohio 2002) (finding that under Ohio law, "if a party is afforded an opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action"); *Hawkins Pro–Cuts, Inc. v. Garcia*, 1998 Ohio App. LEXIS 96, at *13, 1998 WL 12652, at *5 (Ohio Ct.App. Jan. 16, 1998) (concluding that constitutional due process rights were not violated where defendant had actual notice of the declaratory judgment action before the state court granted the default judgment) (citing *Palazzi v. Estate of Gardner*, 32 Ohio St.3d 169, 174, 512 N.E.2d 971 (1987)); *cf. United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 1378, 176 L.Ed.2d 158 (2010) ("Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Here, [the creditor] received *actual* notice of the filing and contents of [the debtor's]

---

**11.** While *Kremer* involved a question of claim preclusion, the Supreme Court observed that both claim preclusion and issue preclusion are subject to the same requirements regarding the full and fair opportunity to litigate. *Kremer*, 456 U.S. at 481, n. 22, 102 S.Ct. 1883.

plan. This more than satisfied [the creditor's] due process rights.") (emphasis in original) (internal quotation marks and citations omitted).

While the Debtor's *pro se* status and his misunderstanding of the consequences of his failure to appear at the Default Judgment Hearing may have established grounds to set aside the Default Judgment for excusable neglect, this case again differs from *In re Sweeney* in that State Court has already made a determination—not once but three times—that service of the State Court Complaint was nonetheless proper. In essence, this creates a second question of issue preclusion pertaining to the State Court's determination that service was proper. With respect to that inquiry, the third and fourth elements of issue preclusion are satisfied in that the issue of service was raised in both this adversary proceeding and the State Court Action and Yust and the Debtor were parties in both actions. The first and second elements of issue preclusion are also satisfied in that the State Appellate Court decision is a final judgment after the Debtor had a full and fair opportunity to litigate the issue of service and the issue of service was actually and directly litigated in the prior suit and was necessary to the final judgment.

Specifically, the Magistrate found at the Default Judgment Hearing that the Debtor was properly served with the State Court Complaint and summons on August 20, 2010 at the Zig Zag Road and Eagles Lake Drive, Cincinnati, Ohio addresses listed for service. The Debtor, at which point was now represented by counsel, filed an objection to and motion to dismiss the Magistrate's Decision. In connection with the objection and motion to dismiss, the Debtor submitted an affidavit which stated that the Debtor resided "intermittently" at the Zig Zag Road address be-

tween the summer of 2009 and the fall of 2010 and that he also resided with his sister in Covington, Kentucky during this timeframe. The Debtor further averred that he "left the state of Ohio for a construction project in South Carolina between July 30, 2010 and August, 2010." *Id.* The State Court Judge, after considering the parties' briefs and oral argument on the issue of service, issued the Default Judgment overruling the Debtor's objection and denying his motion to dismiss, having concluded that the Debtor was properly served.

On appeal, the State Appellate Court noted that:

> When the certified mail was returned as unclaimed, Yust served the defendants-appellants via ordinary mail. *See* Civ.R. 4.6(D). "[T]here is a presumption of proper service in cases where the Civil Rules on service are followed. However, this presumption is rebuttable by sufficient evidence." *Rafalski v. Oates,* 17 Ohio App.3d 65, 66, 477 N.E.2d 1212 (8th Dist.1984), *citing Grant v. Ivy,* 69 Ohio App.2d 40, 429 N.E.2d 1188 (10th Dist.1980).

State Appellate Court Decision. In affirming the Default Judgment, the State Appellate Court concluded that the Debtor "did not rebut the presumption of proper service." This conclusion is supported by the Debtor's own affidavit, which states that he resided at the Zig Zag Road address—albeit "intermittently"—during the period of time that the State Court found that service was properly effectuated. Accordingly, this Court finds that the State Court's determination that service was proper is entitled to full faith and credit under 28 U.S.C. § 1738 and the Debtor is precluded from re-litigating this issue. Correspondingly, because service was sufficient in the State Court Action, the Debtor had a full and fair opportunity to liti-

gate the issue of fraud in the State Court Action. *See In re Foster,* 280 B.R. at 207 (concluding that the debtor had an adequate opportunity to litigate the issue of fraud where the debtor sought reconsideration of the state tribunal's order and had the opportunity to seek further review of the order); *Rodriguez v. Farahmand (In re Farahmand),* 2006 Bankr.LEXIS 2446 at *14 (Bankr.C.D.Cal. May 2, 2006) (declining to second guess the state court's findings of service, which were fully considered during the prove-up hearing on the default judgment); *Lexus Real Estate Group, Inc. v. Bullitt County Bank,* 300 Fed.Appx. 351, 357 (6th Cir.2008) (affirming the district court's determination that it was bound under 28 U.S.C. § 1738 by the state court's ruling regarding personal jurisdiction over the defendant where the issue of personal jurisdiction was affirmed by the state court of appeals, regardless of whether the state court of appeals was correct in its determination); *Griego v. Padilla (In re Griego),* 64 F.3d 580, 585 (10th Cir.1995) (holding that the issue of whether a party had a full and fair opportunity to litigate a claim could not be relitigated where the state trial and appellate courts had considered and rejected this issue).

**b.** ***"Actually And Directly Litigated" And "Necessary To The Final Judgment"***

The second element of the issue preclusion analysis requires a determination of whether the issue sought to be precluded—in this instance, fraud under § 523(a)(2)(A)—was "actually and directly litigated in the prior suit" and if the adjudication of that issue was "necessary to the final judgment." Noting that Ohio courts have not agreed on whether or how to apply issue preclusion standards to default judgments, the Sixth Circuit Bankruptcy Appellate Panel concluded that the rule to

be gleaned from the limited Ohio case law on this subject "is that a default judgment must contain express findings in order to be given preclusive effect in subsequent litigation between the parties" and adopted the following test to determine whether an issue was "actually and directly litigated" in the context of default judgments:

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, *must actually make findings of fact and conclusions of law* which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

*In re Sweeney,* 276 B.R. at 193–94 (quoting *Hinze v. Robinson (In re Robinson),* 242 B.R. 380, 387 (Bankr.N.D.Ohio 1999)) (emphasis in original). In adopting this approach, the Bankruptcy Appellate Panel explained that:

> [T]he state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if

any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

*Id.* at 194.

■ The Debtor raises several arguments as to why the issue of fraud was not "actually and directly litigated" in the State Court Action. First, the Debtor asserts that the Default Judgment was premised on a faulty complaint because the fraud allegation was not sufficiently pled in the State Court Complaint as required by the rules of civil procedure. In particular, the Debtor contends that the State Court Complaint is deficient in that it fails to specify which draw requests, change orders or invoices were allegedly fraudulent, who committed the fraud and when it was committed.

Rule 9(B) of the Ohio Rules of Civil Procedure ("*Rule 9(B)* "), like Rule 9(B) of the Federal Rules of Civil Procedure, requires that allegations of fraud and circumstances constituting fraud must be pled with particularity. Ohio R. Civ. P. 9(B). Interpreting the requirements of Rule 9(B), Ohio courts note that "[t]he 'circumstances constituting fraud' to which Civ. R. 9(B) refers normally include the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud." *Baker v. Conlan,* 66 Ohio App.3d 454, 458, 585 N.E.2d 543 (Ohio Ct.App.1990) (citations omitted). Ohio courts determine on a case by case basis whether a pleading contains the appropriate degree of specificity where a claim of fraud is asserted. *Id.*

Ohio courts also note, however, that "[t]he Civ. R. 9 requirement of particularity must be applied in conjunction with the general directives in Civ. R. 8 that the pleadings shall contain 'a short and plain statement of the claim' and that each averment should be 'simple, concise, and di-

rect.'" In balancing these dual requirements, Ohio courts observe that:

> The focal point of a Rule 9(b) inquiry should be whether, given the nature and facts of the case and the circumstances of the parties, the pleading in question is sufficiently particular to satisfy the purposes of Rule 9(b), [which are: (1) to ensure] that the allegations are specific enough to inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense[; (2) to eliminate] those complaints filed "as a pretext for discovery of unknown wrongs"[; and, (3) ] to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

*F & J Roofing Co. v. McGinley & Sons, Inc.,* 35 Ohio App.3d 16, 17, 518 N.E.2d 1218 (1987) (ellipses and citations omitted).

While the State Court Complaint may be less than ideal, it nonetheless satisfies the requirements of Rule 9(B) as interpreted by Ohio courts. Yust's fraud claim is premised on allegedly false representations made by Henkel Design to Yust and his Bank pertaining to certain draw requests submitted in connection with the Contract. Complaint, ¶ 50. The State Court Complaint describes three categories of actions relating to the allegedly fraudulent draw requests: (1) submission of false draw requests based on misrepresentations that subcontractors and materialmen had been paid; (2) submission of inflated or misrepresented invoices for materials and services; and, (3) submission of unauthorized change orders.

In support of these contentions, the State Court Complaint specifies the dates of the draw requests submitted by Henkel Design to Yust and his Bank and the amounts that were paid to Henkel Design with respect to those draw requests.

State Court Complaint, ¶¶ 13, 14, 15, 17, 23 and 24. The State Court Complaint further specifies that Henkel Design made representations in connection with each draw request with respect to invoices, change orders and payments for work or materials, which representations were false. State Court Complaint, ¶¶ 10, 42 and 50–52. With respect to the alleged misrepresentations regarding subcontractor and materialmen payments, the State Court Complaint alleges that Yust was forced to pay certain subcontractors and materialmen directly for amounts already disbursed to Henkel Design for payment of these expenses but which Henkel Design failed to remit to the subcontractors and materialmen. State Court Complaint, ¶¶ 31–32. While the allegations with respect to forged change orders and inflated invoices could have benefitted from more detail, the State Court Complaint sufficiently states a case for fraud involving the draw requests and payments thereof. The Debtor, as the principal of Henkel Design, could review the company business records and the documents submitted with the specified draw requests to determine whether the representations made in the draw requests were accurate such that the Debtor could prepare a defense on behalf of Henkel Design. *DQ Ohio, LLC v. IDC Ohio Mgmt., LLC,* 2012 Ohio Misc. LEXIS 59 at *14 (Ohio C.P. Feb. 8, 2012) (finding that complaint satisfied the requirements of Rule 9(B) where allegations were "specific enough to inform all Defendants of the acts of which Plaintiffs complain, and to enable all Defendants to prepare an effective response and defense"); *Baker v. Conlan,* 66 Ohio App.3d at 459, 585 N.E.2d 543 (finding that although the complaint did not allege every act which the plaintiffs claimed in support of their fraud claims, actions of which the plaintiffs complained were sufficient enough to permit the defendants to prepare an effective response and defense).

Similarly, the State Court Complaint sufficiently apprises the Debtor that Yust was seeking to hold the Debtor individually liable for the alleged fraud of Henkel Design under the doctrine of piercing the corporate veil based on the Debtor's ownership, management and control over Henkel Design. State Court Complaint, ¶¶ 2, 3, 35–39 and Prayer for Relief. Again, the State Court Complaint is sufficiently specific to apprise the Debtor of the nature of the claims against him individually and thereby afford him the opportunity to prepare a defense against such claims.

Moreover, the State Court Complaint is sufficiently specific that it is not "a pretext for discovery of unknown wrongs" nor are the allegations made in the State Court Complaint so unfounded as to injure the reputation and goodwill of the Debtor. Accordingly, this Court rejects the Debtor's argument that the State Court Complaint is not sufficiently detailed to establish a foundation for issue preclusion.

■■ The Debtor next argues that the issue of fraud was not actually litigated in the State Court Action because the testimony and documentary evidence presented at the Default Judgment Hearing was inadmissible evidence. The transcript of the Default Judgment Hearing reflects that the Magistrate reviewed the pleadings in the record, heard testimony from Yust and admitted into evidence those exhibits offered by Yust during the course of the Default Judgment Hearing. The "actually and directly litigated" requirement "does not refer to the quality or quantity of argument or evidence addressed to an issue. It requires only two things: first, that the issue has been effectively raised in the prior action, ... and second, that the losing party has had a 'fair opportunity

procedurally, substantively, and evidentially' to contest the issue." *Overseas Motors, Inc. v. Import Motors Ltd., Inc.,* 375 F.Supp. 499, 516 (E.D.Mich.1974), *aff'd,* 519 F.2d 119 (6th Cir.1975), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975) (citations omitted). For the reasons previously discussed, the issue of fraud was adequately raised in the State Court Complaint and the Debtor had a full and fair opportunity to litigate that issue before the Magistrate and on review before the State Court Judge and then finally on appeal to the State Court of Appeals. As such, under the facts of this case, the Debtor's argument regarding the admissibility of evidence does not impact the question of whether the issue of fraud was actually litigated in the State Court Action. *See In re Foster,* 280 B.R. at 207 (finding that issue of fraud was actually litigated where the debtor had an adequate opportunity to litigate the issue of fraud in the state proceeding and to seek review of the state tribunal's findings).

■ Lastly, the Debtor maintains that there are inadequate findings of fact in the Default Judgment to support a determination by this Court that the issue of fraud was actually and directly litigated in the State Court Action. The Debtor makes three arguments in this regard. First, the Debtor argues that there is no basis for the State Court's finding that the Debtor—in addition to Henkel Design—is individually liable for committing fraud. Second, the Debtor argues that the State Court's findings regarding fraud (*i.e.,* "Defendants committed fraud by falsifying at least one draw request and one change order and said actions demonstrate malice or aggravated or egregious fraud") are too vague. Third, the Debtor argues that the State Court's findings are deficient because the Default Judgment does not apportion the damages award between the

judgment against Henkel Design on the breach of contract claim and the judgment against Henkel Design and the Debtor on the fraud claim.

■ Regarding the Debtor's first argument, as relates to the Debtor individually, the State Court Complaint charges that the Debtor should be found personally liable for the fraud of Henkel Design under the doctrine of piercing the corporate veil based on the Debtor's ownership, management and control over Henkel Design. To establish a cause of action to pierce the corporate veil under Ohio law, a plaintiff must prove by a preponderance of the evidence that:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted from such control and wrong.

*In re Lupo,* 353 B.R. at 542 (quoting *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.,* 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993) (other citations omitted)). With respect to the first factor, Ohio courts consider such factors as:

> (1) grossly inadequate capitalization, (2) failure to observe the corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporate was a mere facade for the operations of the dominant shareholder(s) [in determining whether the corporation is

the alter-ego of the individual, however,] ... because of the equitable nature of the veil piercing doctrine, no list of factors can be exclusive or exhaustive.

*Id.* (internal quotation marks and citations omitted).

The State Court Complaint alleges that the Debtor is the sole owner of Henkel Design. Yust testified, based on his interactions with Henkel Design, that Henkel Design was operated out of the Debtor's home and that the Debtor was the only employee of Henkel Design. While a corporation being owned and operated by its sole principal is not a *per se* basis to hold the corporation's principal personally liable, *id.*, there is evidence in the record that the Debtor disregarded corporate formalities by virtue of the fact that the Contract is between Yust and the Debtor individually—not Yust and Henkel Design. Moreover, the Contract provided that all applications for payment (*e.g.*, draw requests) submitted to Yust and the Bank were to be supported by affidavits, which necessarily would have been submitted by the Debtor as the sole employee of Henkel Design. *See Sloan Dev., LLC v. Gill (In re Gill)*, 2012 Bankr.LEXIS 1133, at \*4, 2012 WL 909513, at \*4 (Bankr.N.D.Ohio Mar. 15, 2012) (giving preclusive effect to state court judgment finding debtor individually liable for fraud of debtor's wholly-owned corporation where debtor personally signed the fraudulent invoices requesting payment on construction contract).

When assessing whether a state court judgment should be given preclusive effect in a nondischargeability action, a bankruptcy court may review the entire record in the state court case to determine the grounds for, or the meaning of, the state court's judgment or order. *See Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 615 (Bankr.S.D.Ohio 2011) (collecting Ohio case law); *Hogan v. George (In re*

*George)*, 2013 Bankr.LEXIS 114, at \*20, 2013 WL 135274, at \*7 (6th Cir. BAP Jan. 11, 2013) (citing *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981)). In finding that "Defendants committed fraud by falsifying at least one draw request and one change order and said actions demonstrate malice or aggravated or egregious fraud," an argument could be made that the State Court determined from the foregoing information in the record that the Debtor exercised control over Henkel Design to obtain money from Yust via his Bank based on fraudulent misrepresentations in the draw requests, which misrepresentations were justifiably relied upon by Yust and his Bank. *Cf. In re Grimsley*, 449 B.R. at 618 (inferring that the state court found that the debtor committed fraud by virtue of the state court's imposition of punitive damages against the debtor based on the bankruptcy court's review of the entire record in the nonbankruptcy litigation, including the jury instructions, special interrogatories and verdict); *but see Clark v. Springhart (In re Springhart)*, 450 B.R. 725, 734 (Bankr.S.D.Ohio 2011) (declining to infer fraud in context of a default judgment based solely on damages award).

Turning to the Debtor's second and third arguments, even if this Court were to conclude that, in considering the record as a whole, the Default Judgment is minimally sufficient to qualify for preclusion on the issue of liability for fraud, this Court nonetheless is unable to discern the extent to which the State Court found that the Debtor committed fraud or the damages affiliated with the State Court's determination on that issue. To be entitled to preclusive effect, a judgment should have sufficient detail to enable a subsequent court to have a clear understanding of the prior court's ruling without having to speculate about the scope of the prior court's findings of fact and conclusions of

law. *In re Sweeney*, 276 B.R. at 194 (finding that the state court judgment left "open to speculation whether the court found fraud," which "lack of clarity" contributed to the court's conclusion that the state court judgment was not sufficiently detailed to support application of the doctrine of issue preclusion). This is particularly true in the context of a non-dischargeability determination because it is only those damages proximately caused by the fraud that may be given preclusive effect. *Demerdjian v. Thompson (In re Thompson)*, 354 B.R. 174, 180 (Bankr. E.D.Tenn.2006) ("Although the plaintiff has a claim for breach of contract, only that portion of the damages proximately caused by the fraud is nondischargeable under § 523(a)(2)(A).") (citing *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 703–04 (Bankr.S.D.N.Y.1998) (analysis still required on each debt to determine whether it was proximately caused by § 523(a)(2)(A) acts) (additional citations omitted)); *see also Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 925 (Bankr.N.D.Ga.2010) ("[Issue preclusion] as to liability is not the same as [issue preclusion] as to damages, and the Court must separately analyze the damages awarded to the Plaintiff").

The State Court found that the Debtor and Henkel Design falsified ***at least*** one draw request and one change order. The State Court did not specify which "one" draw request and which "one" change order that it determined were falsified. Although it would appear from the record that the State Court most likely was referring to the Fourth Draw Request (which contained the Bolton Bros. Invoice) and the July 2009 Change Order, the State Court's use of the phrase "at least" suggests that the State Court may have concluded that additional draw requests and change orders were falsified.

The award of damages in the Default Judgment does nothing to clarify the extent of the State Court's findings of fraud or the amount of damages attributed to such fraud. The Default Judgment provides that Yust is entitled to compensatory damages of $202,784.00 plus attorneys' fees and costs of $10,617.40 "[a]s a result of Defendants' breach of contract ***and*** fraud" (emphasis added), making it unclear if or how the State Court allocated the damages between the two claims. The record in the State Court fails to shed any light on the State Court's determination of damages. The transcript of the Default Judgment Hearing reflects mathematical irregularities regarding the calculation of damages,[12] references evidence presented to the State Court that is not in the sum-

12. In summarizing Yust's asserted damages, Yust's counsel indicated to the State Court at the Default Judgment Hearing that Yust incurred $99,570 of out of pocket costs plus $112,206 in lost profits for total damages of $202,784, which is the figure reflected as compensatory damages in the Default Judgment. The two figures for out of pocket costs and lost profit, however, total $211,776. Similarly, the figures used to calculate lost profits are not mathematically correct. Yust testified that he would have had additional gross sales of $190,123 if the construction project had been completed as agreed. Using a 54% profit margin, Yust testified that his lost profits were $110,206; however, 54% of $190,123 is $102,666.

Yust argues that the *Rooker–Feldman* doctrine prevents this Court from reviewing or otherwise adjusting the amount of the Default Judgment. The *Rooker–Feldman* doctrine is a jurisdictional doctrine which provides that federal courts (other than the Supreme Court) may not sit in direct review of state court decisions. *In re Sweeney*, 276 B.R. at 195. While the *Rooker–Feldman* doctrine, as well as principles of claim preclusion, may prevent a bankruptcy court from reviewing and redetermining the amount of damages awarded in a state court judgment, it nonetheless remains within a bankruptcy court's exclusive jurisdiction to determine whether such debt is nondischargeable pursuant to Section 523(a)(2). *Id.; Custom Heating & Air, Inc. v.*

mary judgment record before this Court,[13] and discusses damages that are traditionally breach of contract and not fraud damages.[14] These uncertainties contribute to this Court's conclusion that the Default Judgment is not sufficiently detailed to support the application of issue preclusion in this adversary proceeding.

As a result, this Court finds that Yust has failed to establish that the issue of fraud was "actually and directly litigated" in the State Court Action because this Court is unable to determine the extent of the State Court's findings of fraud or the amount of damages attributed to such

fraud based on the record before this Court. The Motion for Summary Judgment is therefore DENIED.

## IV. *Conclusion*

For the foregoing reasons, the Motion to Dismiss is **GRANTED**. The Motion for Summary Judgment is **DENIED**.

This matter will be set for a status conference by separate order.

**IT IS SO ORDERED.**

*Andress (In re Andress)*, 345 B.R. 358, (Bankr. N.D.Okla.2006) ("Nothing in the *Rooker–Feldman* doctrine prevents this Court from [determining whether a judgment may be discharged]; indeed, such a determination falls squarely within the core jurisdiction of the bankruptcy court."); *see also In re George*, 2013 Bankr.LEXIS 114, at \*21–22, 2013 WL 135274, at \*7 (affirming bankruptcy court's determination that only $171,000 of the $513,000 in total damages awarded in state court judgment was nondischargeable).

13. *See supra* n.4.

14. Based on the testimony and argument made to the State Court as reflected in the transcript of the Default Judgment Hearing, the damages asserted by Yust include expenditures to complete the construction project (including amounts over and above the contract price) and lost profits. To the extent that Yust's out of pocket expenditures included payments to subcontractors for amounts contained in draw requests where the Debtor falsely certified such subcontractors had already been paid (which Yust testified to in general terms at the Default Judgment Hearing), those amounts may be non-dischargeable as monies obtained by fraud. *See generally Cripe v. Mathis (In re Mathis)*, 360 B.R. 662, 667 (Bankr.C.D.Ill.2006) (noting that "[a] contractor's false affidavit certifying that subcontractors and materialmen have been paid and that there are no mechanic's or materialmen's liens against the property when in fact such subcontractors have not been paid may, in some cases, result in a

nondischargeable debt under § 523(a)(2)(A).") (citations omitted). The precise dollar amount that Yust paid to subcontractors who should have been paid from the funded draw requests, however, is not in the record before this Court.

The other out of pocket costs to complete the construction project and damages for lost profits do not seem to be debts for money, property, services or financing *obtained* by fraud; nor is it apparent from the Default Judgment or the State Court record that these damages were proximately *caused by* the Debtor's fraudulent acts. Rather, these damages appear to be more in the nature of traditional breach of contract damages, which are generally dischargeable. *In re Thompson*, 354 B.R. at 180 (citing *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 24–25 (Bankr. S.D.N.Y.2002) (carefully and thoroughly distinguishing between building contractor fraud and plain breach of contract in determining damages and dischargeability issues)); *Integrated Practice Mgmt. Inc. v. Olson (In re Olson)*, 325 B.R. 791, 801–802 (Bankr. N.D.Iowa 2005)(finding that consequential damages were not funds obtained by fraud or proximately caused by fraud and were therefore dischargeable breach of contract damages).

This Court also notes that the total dollar amount of the damage award is in stark contrast to the only two allegations of wrongdoing described by a specific dollar amount in the record: a forged $950 change order and a draw request inflated by approximately $1,000.