**IN RE: Edward F. PANOS, Debtor.**

**Eric Schmidt, et al., Plaintiffs,**

**v.**

**Edward F. Panos, Defendant.**

**Case No. 13–58441**
**Adv. Pro. No. 14–02035**

United States Bankruptcy Court,
S.D. Ohio, Eastern Division.

Signed May 26, 2017

See also 61 N.E.3d 740.

Thomas R. Allen, Allen Kuehnle Stovall & Neuman LLP, Columbus, OH, for Debtor.

William B. Logan, Jr., Kenneth M. Richards, Larry J. McClatchey, Stephanie P. Union, Columbus, OH, for Trustee.

Mary Anne Wilsbacher, USDOJ–Office of the U.S. Trustee, Pamela Arndt, Columbus, OH, for U.S. Trustee.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNTS I, III, AND IV OF FIRST AMENDED COMPLAINT (Doc. 54)

C. Kathryn Preston, United States Bankruptcy Judge

This cause came on for consideration of *Plaintiffs' Motion for Summary Judgment on Counts I, III, and IV of First Amended Complaint* (Doc. 54) (the "Motion"), filed on November 29, 2016; *Defendant Edward F. Panos' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Counts I, III, and IV of First Amended Complaint* (Doc. 58) (the "Response"), filed December 20, 2016;

and *Plaintiffs' Reply Supporting Motion for Summary Judgment on Counts I, III, and IV of First Amended Complaint* (Doc. 61) (the "Reply"), filed December 30, 2016. Eric Schmidt ("Schmidt"), Brenda Schmidt, and Paul Bursey (together, the "Plaintiffs") seek a determination that a certain state court judgment entered in their favor and against Edward F. Panos ("Panos") is nondischargeable in Panos' bankruptcy case. The Court, having considered the record and the arguments of the parties, issues the following opinion.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Amended General Order 05–02 entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. Background

This dischargeability proceeding is the result of a failed business arrangement that involved the sale of the Plaintiffs' company to one controlled by Panos. Relevant events leading to this adversary appear to be without dispute and can be briefly summarized as follows:

In 2000, the Plaintiffs founded an information technology company called iBeam Solutions, LLC ("iBeam"). Schmidt and Paul Bursey each owned approximately 40% of iBeam, and Brenda Schmidt owned 2%. The company's revenues grew to $1.6 million in 2006 and $2 million in 2007. Over the course of its existence, iBeam had accumulated significant debt, much of which had been personally guaranteed by Plaintiffs.

One of iBeam's clients was Language Access Network, Inc. ("LAN"), a public company. LAN's primary business was providing foreign language interpretation services in medical treatment settings. Panos was LAN's controlling shareholder and at all times relevant was directly involved in company business.

In 2006, Panos and Schmidt discussed the prospect of LAN purchasing iBeam in order to add iBeam's information technology services to LAN. The acquisition closed on August 1, 2007, and iBeam became a wholly owned subsidiary of LAN. As part of the acquisition agreement, Schmidt agreed to continue serving as president of iBeam at a base salary of $100,000 per year.

Over the course of the next three years and for a combination of reasons, the relationship between Panos and the Plaintiffs steadily soured. Certain debts of iBeam, which the Plaintiffs had personally guaranteed and which they expected would be paid off following LAN's acquisition of iBeam, were never paid. Over the span of six months in 2007, Panos had sold 1.625 million shares of LAN for approximately $750,000, which had driven the stock price down to $0.13 per share. The Plaintiffs believed that iBeam's information technology expertise would serve as in-house support for LAN's medical interpretation business, but LAN's business was spun off from the combined company, now called iB3, in 2008. Plaintiffs also believed that additional investment financing would be secured promptly, but the expected investors never materialized.

In June 2009 Panos sold 191,364 shares of iB3 common stock for approximately $193,000. Following this sale, he refused to support iB3's operations further.

In September 2009 Panos told Schmidt that he was done with iB3 and wanted Schmidt to buy back iBeam. Panos' attorneys sent Schmidt a letter accusing him of mismanagement of iB3, misrepresentation,

and failure to properly disclose information to iB3 shareholders and the public. The letter indicated that Panos intended to remove the existing Board of Directors and management team, liquidate any assets of the company, and file a lawsuit against Schmidt personally. The letter also proposed a settlement: iBeam would be spun off from iB3 to Schmidt. Further, Schmidt would (1) assume all the debts of iBeam and certain debts of iB3 as well, (including those that Schmidt believed Panos had earlier promised to pay); (2) return all of his shares of iB3; and (3) forgo any debts owed to him by iB3 for employment, past services, or rent.

Schmidt offered a counterproposal, which Panos rejected. Panos called a shareholder meeting to appoint a new board of directors, which was held November 13, 2009. After the shareholder meeting, Panos again tried to convince Schmidt to buy back iBeam for $50,000 plus assumption of the debts and other considerations. Panos warned Schmidt that if he did not meet these demands, Panos would "bankrupt iBeam, sell off the assets, and screw everyone else." (Tr., 140–41, Ex. 89.) Schmidt declined to buy back iBeam.

At the board of directors meeting immediately following the shareholder meeting, Panos' attorneys introduced resolutions terminating the employment of Schmidt and his wife, Brenda Schmidt. Panos continued to maintain control over iB3.

In 2010 Plaintiffs filed suit against Panos, Panos Industries, LLC, and iB3 ("State Court Proceeding") in the Common Pleas Court of Franklin County, Ohio ("State Court"). A trial was held in May 2013. Plaintiffs' claims for indemnification, breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, promissory estoppel and unjust enrichment were submitted to the jury, which returned verdicts in favor of Plaintiffs on all claims except promissory estoppel. The jury also found that that Panos had exercised such complete control over iB3 that it was proper to pierce the corporate veil to hold Panos liable for the fraudulent, illegal, or similarly unlawful acts of the company.

The jury awarded damages against Panos and Panos Industries, jointly and severally, in the total amount of $890,760, and against Panos and iB3, jointly and severally, in the total amount of $306,439. The jury also imposed punitive damages of $500,000 on Panos individually, payable to Schmidt only; no punitive damages were awarded to Brenda Schmidt or Paul Bursey. Panos moved for a directed verdict and later for judgment notwithstanding the verdict, both of which were denied.

On September 5, 2013, the State Court issued its Final Judgment Entry (the "Judgment"), in which it adopted the jury's verdicts and granted Plaintiffs' request for attorney's fees in the amount of $677,133 and prejudgment interest in the total amount of $338,926. The Judgment against Panos, whether individually or jointly and severally with either Panos Industries or iB3, totaled $2,713,258.[1]

Panos filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 24, 2013. Plaintiffs initiated this adversary proceeding, filing a complaint on February 3, 2014, later amended on April 9, 2014 ("Amended Complaint") (Doc. 10). The Amended Complaint seeks a determination that Panos' debt arising from the

---

1. Panos appealed the State Court's decision to the Court of Appeals of Ohio ("Appeals Court"), which appellate proceeding was stayed when Panos filed a petition for bankruptcy relief. This Court granted relief from the automatic stay to allow Panos to proceed with the prosecution of his appeal. On March 22, 2016, the Appeals Court rendered its decision, affirming the State Court's Judgment in all respects.

Judgment (the "Debt") is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (4), (6), and (19) and that Panos should be denied a discharge under 11 U.S.C. § 727(a)(2), (3), (4), and (5).[2]

Of these eight counts, only three are before the Court at this time. Plaintiffs' Motion seeks summary judgment excepting the Debt from discharge under 11 U.S.C. § 523(a)(2)(A), (6) and (19). Plaintiffs assert that the facts supporting each of these three counts were conclusively established in the State Court Proceeding, that the doctrine of issue preclusion bars the relitigation before this Court of issues already determined in the State Court, and that they are therefore entitled to judgment in their favor as a matter of law.

### III. Standard of Review for Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must illustrate that the facts are not genuinely disputed by pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). The party seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed. R. Civ. P. 56(c)(3).

If the movant satisfies this burden, the nonmoving party may not rest on its pleading, but similarly must, by citation to particular parts of the record, demonstrate that a fact or facts are subject to dispute. Fed. R. Civ. P. 56(c)(1). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The Judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). "When determining whether the evidence is sufficient, the trial court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury." *J.C. Wyckoff & Assocs., Inc. v. Standard·Fire Ins. Co.*, 936 F.2d 1474, 1487 n.19 (6th Cir. 1991) (citation omitted). Rather, the court must deem as true the nonmovant's evidence and must view all justifiable inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

The Sixth Circuit Court of Appeals has articulated the following standard to apply when evaluating a motion for summary judgment:

---

**2.** The Amended Complaint also contained counts seeking a declaratory judgment regarding community property and injunctive relief prohibiting Panos from transferring certain assets under his control. By agreed order (Doc. 41) entered July 16, 2014, these two counts were dismissed, leaving the eight listed above.

[T]he moving [party] may discharge its burden by "pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its [position]. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997) (internal citations omitted).

A material fact is one whose resolution will affect the determination of the underlying action. *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *Schaffer v. A.O. Smith Harvestore Prods., Inc.*, 74 F.3d 722, 727 (6th Cir. 1996) (citation omitted).[3] "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. American Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citations omitted). However, determinations of credibility, weight to be given the evidence, and inferences to be drawn from the facts remain the province of the jury. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually. unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548.

## IV. Issue Preclusion

 Courts apply the doctrine of issue preclusion, traditionally called collateral estoppel,[4] to prevent "parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 637 N.E.2d 917, 923 (1994). This conserves scarce judicial resources by minimizing repetitive litigation, protects parties from the cost and inconvenience of multiple lawsuits, and prevents inconsistent results. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The Supreme Court has held that issue preclusion principles are applicable to dischargeability proceedings in bankruptcy cases. *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Though bankruptcy courts have exclusive jurisdiction to determine dischargeability issues, this "does not require the bankruptcy court to redetermine all the underlying facts" of the case if they were previously determined in an earlier lawsuit.

---

**3.** Nonetheless, the Court is not required to "speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

**4.** The United States Supreme Court has expressed a preference for use of the term "issue preclusion" over the term "collateral estoppel." *See Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 702–03 (6th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Within this opinion, however, the terms are used interchangeably.

*Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981). "[W]here all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues." *Id.* at 228.

■■■■ The application of issue preclusion in a dischargeability action depends on whether the prior state court judgment would be afforded preclusive effect under state law. *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 388 (6th Cir. B.A.P. 1998).

> In order to successfully assert collateral estoppel under Ohio law, a party must plead and prove the following elements: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit.

*Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

Plaintiffs contend that they are entitled to summary judgment because the facts necessary to a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A), (6), and/or (19) were established in the State Court Proceeding between Plaintiffs and Defendants, so issue preclusion bars Defendants from relitigating the relevant issues here.

As an initial matter, the Court concludes that two of the four elements articulated in *Sarff* have been satisfied as to each of the three causes of action. First, the party against whom issue preclusion is being asserted here, Panos, was a defendant in the litigation before the State Court, thereby satisfying the privity requirement. Second, the State Court's Judgment was a final judgment following a multi-day trial at which both parties were present and represented by counsel, which satisfies the second requirement that parties had full and fair opportunity to litigate. The remaining two elements will be addressed with respect to each of the three causes of action at issue here.

## V. 11 U.S.C. § 523(a)(2)(A)—Fraud

■■■ Skipping ahead for the moment to the fourth element, issue preclusion will apply only if the issue involved in the current litigation is the same as the issue involved in the prior litigation. "In a dischargeability action, this generally means that if the factual issues in the state court proceeding were determined 'using standards identical to those in dischargeability proceedings, then collateral estoppel ... [will] bar relitigation of those issues in the bankruptcy court.'" *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 417 (Bankr. N.D. Ohio 1998) (quoting *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981)).

Section 523 of the Bankruptcy Code provides, in relevant part, as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> ...
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

■■■ The Sixth Circuit has held that to except a debt from discharge under § 523(a)(2)(A), a creditor must prove by a

preponderance of the evidence the following elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir. 1998) (footnote omitted).

■ Following the presentation of evidence in the State Court Proceeding, the jury received the following instructions:

> In order to prove a claim for fraud, plaintiff must by a preponderance of the evidence prove each of the following elements:
>
> > (1) a representation, or where there is a duty to disclose, concealment of a fact;
> >
> > (2) which is material to the transaction at hand;
> >
> > (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;
> >
> > (4) with the intent of misleading another into relying upon it;
> >
> > (5) justifiable reliance upon the representation or concealment; and
> >
> > (6) a resulting injury proximately caused by the reliance.

Motion, Ex. B, Jury Instructions, 12. The six elements required to prove fraud as contained in the jury instructions are identical to those set forth by the Supreme Court of Ohio. *See Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St.3d 69, 491 N.E.2d 1101, 1105 (1986).

This Court has recognized that the elements of common law fraud under Ohio

law are the same as those applied by bankruptcy courts when applying § 523(a)(2)(A).

> [T]he elements of common law fraud in Ohio are substantially equivalent to those required to establish a nondischargeable debt based on false representation under § 523(a)(2)(A). *See Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 389 (6th Cir. BAP 1998) (concluding that the elements of a § 523(a)(2)(A) claim and a claim for common law fraud are "virtually identical"); *Ohio Bureau of Workers' Comp. v. Foster (In re Foster)*, 280 B.R. 193, 205 (Bankr. S.D. Ohio 2002) (same); *Sullivan v. Hallagan (In re Hallagan)*, 241 B.R. 544, 546 (Bankr. N.D. Ohio 1999) ("[C]onduct which would render a debt nondischargeable under § 523(a)(2)(A) is equivalent to common law fraud . . . ."). Hence, a state court's determination that a debtor committed common law fraud would necessarily satisfy the elements set forth in *Rembert*. . . . [B]y adjudicating [the Plaintiff's] common law fraud claim, the State Court essentially applied the *Rembert* test for determining whether a debt arising from a false representation is excepted from discharge by § 523(a)(2)(A).

*Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 430 (Bankr. S.D. Ohio 2007)(Hoffman, J.).

In reaching its verdict, the jury in the State Court Proceeding considered evidence of Panos' actions in light of the standards contained in the jury instructions, which are essentially equivalent to those set forth by the Sixth Circuit in *Rembert* to evaluate dischargeability actions under § 523(a)(2)(A). Accordingly, the issues in this litigation are the same as

those in the prior litigation, which satisfies the fourth element of issue preclusion.

 Turning to the third element necessary to apply issue preclusion, "the issue must have been admitted or actually tried and decided and must be necessary to the final judgment[.]" *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 388 (6th Cir. B.A.P.1998). The issue of Panos' fraud was never expressly admitted, of course, but it was tried and decided. The Plaintiffs presented evidence regarding Panos' fraud, which the jury heard and considered. The jury completed the following Interrogatories regarding fraud:[5]

INTERROGATORY #1

Did **Edward Panos/Panos Industries, LLC**/iB3 Networks, Inc. make false representations or omissions of existing fact to **Eric Schmidt/Brenda Schmidt/ Paul Bursey**?

CIRCLE YOUR ANSWER IN INK **YES** or NO

INTERROGATORY #2

Did **Edward Panos/Panos Industries, LLC**/iB3 Networks, Inc. know that the false representations or omissions of existing fact were false at the time they were made?

CIRCLE YOUR ANSWER IN INK **YES** or NO

INTERROGATORY #3

Were **Edward Panos's/Panos Industries, LLC's**/iB3 Networks, Inc.'s false representations or omissions of existing fact material to the transactions with **Eric Schmidt/Brenda Schmidt/Paul Bursey**?

CIRCLE YOUR ANSWER IN INK **YES** or NO

INTERROGATORY #4

Were **Edward Panos's/Panos Industries, LLC's**/iB3 Networks, Inc.'s false representations or omissions of existing fact made with the intent of misleading **Eric Schmidt/Brenda Schmidt/Paul Bursey**?

CIRCLE YOUR ANSWER IN INK **YES** or NO

INTERROGATORY #5

Were **Eric Schmidt/Brenda Schmidt/Paul Bursey** injured as a proximate result of their reliance on **Edward Panos's/Panos Industries, LLC's**/iB3 Networks, Inc.'s false representations or omissions of existing fact?

CIRCLE YOUR ANSWER IN INK **YES** or NO

Motion, Ex. C, 10–14. Each interrogatory form was signed by at least seven members of the jury to indicate their agreement with the conclusion expressed therein. The jury returned a verdict that Panos had committed fraud, and the State Court adopted that verdict. Motion, Ex. F, Final Judgment Entry.

5. The jurors were instructed that all three defendants and all three plaintiffs were separate entities and that they should express their verdict by circling the proper party on the interrogatory form. Motion, Ex. Trial Transcript Volume 6, 34. Words circled by the jury on the original interrogatories have been indicated in bold typeface and underlined in the interrogatories reproduced here.

The main point of contention, then, involves the Final Judgment itself: the State Court adopted the jury's verdicts, but the $2,713,258 total damage award was not allocated among the various causes of action on which the award is predicated. In other words, the Plaintiffs successfully proved their claims for indemnification, breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and unjust enrichment, but there is no indication in the Final Judgment of how much, if any, of the total judgment amount is attributable to each of the six individual causes of action.

In their Motion, Plaintiffs argue that the State Court's finding of fraud necessarily renders the entire judgment amount non-dischargeable and cite to *In re Grimsley* as support.

> In addition to any amount actually obtained by fraud, also nondischargeable is the "full liability traceable to that sum[,]" including any liability for items such as treble and other punitive damages, attorney's fees and costs. *Cohen [v. de la Cruz]*, 523 U.S. [213] at 219, 118 S.Ct. 1212 [140 L.Ed.2d 341 (1998)]. In other words, "[o]nce it is established that specific money or property has been obtained by fraud ... 'any debt' arising there from is excepted from discharge." *Id.* at 218–19, 118 S.Ct. 1212. The Court accordingly concludes that the full amount of the Judgment—including sums awarded [the creditor] for punitive damages, prejudgment interest, attorney's fees and other costs—is nondischargeable.

*Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 620–21 (Bankr. S.D. Ohio 2011).

▮ The Plaintiffs' reliance on *Grimsley* is misplaced. As here, the bankruptcy court in *Grimsley* evaluated whether a state court judgment was entitled to issue preclusive effect in the context of a dischargeability action under § 523(a)(2)(A).

The plaintiff in the state court case had asserted two claims for relief: one count based on breach of contract and the second count based on fraud; the jury found for the plaintiff on the breach of contract claim only, but awarded both actual and punitive damages, as well as attorney fees. Neither the judgment nor the interrogatory forms contained a finding of fraud, but the bankruptcy court inferred from the award of punitive damages that the issue of fraud had been actually litigated and was necessary to the judgment. The award of punitive damages and attorney fees "demonstrate[d] that [the jury] necessarily made a finding that [the debtor] was guilty of fraud." *Id.* at 618. From the jury instructions, the bankruptcy court further determined that the fraud must have occurred at the time the parties entered into their contract and therefore the actual damages awarded by the jury was for money obtained by fraud. *Id.* at 620. Because the actual damages, punitive damages, attorney fees, prejudgment interest, and costs all arose from—and were all directly traceable to—the initial fraud committed by the debtor, they were all determined to be nondischargeable. The *Grimsley* opinion should not be read, as Plaintiffs apparently do, to suggest that, once fraud is shown, the entire judgment is nondischargeable; it is only those specific amounts *directly traceable* to the fraud that are nondischargeable under § 523(a)(2)(A).

The case of *In re Henkel* is more applicable to the current case. In *Henkel*, the bankruptcy court considered whether issue preclusion should be applied based on a certain default judgment for breach of contract and fraud. *Yust v. Henkel (In re Henkel)*, 490 B.R. 759, 764 (Bankr. S.D. Ohio 2013). The judgment expressly found, in relevant part, that the debtor breached the contract, that he "committed fraud by falsifying at least one draw request and

one change order[,]" and "[a]s a result of the breach of contract and the fraud, the Plaintiff has been damaged in the amount of $202,784.00." *Id.* at 767.

[T]his Court ... is unable to discern the extent to which the State Court found that the Debtor committed fraud or the damages affiliated with the State Court's determination on that issue. To be entitled to preclusive effect, a judgment should have sufficient detail to enable a subsequent court to have a clear understanding of the prior court's ruling without having to speculate about the scope of the prior court's findings of fact and conclusions of law. This is particularly true in the context of a non-dischargeability determination because it is only those damages proximately caused by the fraud that may be given preclusive effect.

The State Court found that the Debtor ... falsified *at least* one draw request and one change order. The State Court did not specify which "one" draw request and which "one" change order that it determined were falsified.... [T]he State Court's use of the phrase "at least" suggests that the State Court may have concluded that additional draw requests and change orders were falsified.

The award of damages in the Default Judgment does nothing to clarify the extent of the State Court's findings of fraud or the amount of damages attributed to such fraud. The Default Judgment provides that [the plaintiff] is entitled to compensatory damages of $202,784.00 plus attorneys' fees and costs of $10,617.40 "[a]s a result of Defendants' breach of contract *and* fraud" (emphasis added), making it unclear if or how the State Court allocated the damages between the two claims. The record in the State Court fails to shed any light on the State Court's determination of damages.

*Id.* at 781–82 (emphasis in original) (citations omitted). Notwithstanding an express finding that the debtor had committed fraud, the bankruptcy court concluded that the default judgment was not sufficiently detailed to determine the extent of the fraud or the amount of damages attributed to that fraud. *Id.* at 782–83. The bankruptcy court therefore determined that the plaintiff had failed to establish that the issue of fraud was actually and directly litigated in the state court proceeding. *Id.* at 783.

As in *Henkel*, the State Court's Final Judgment contains an express but unspecific finding of fraud. The State Court adopted the jury's verdict on fraud but made no specific findings of fact; the interrogatories reproduced above contain the entirety of the factual findings related to fraud. While this Court can conclude from the jury's verdict that Panos committed some fraud, it cannot determine when that fraud occurred or what damages are attributable thereto. The jury may have decided that Panos committed fraud when persuading the Plaintiffs to sell iBeam, or when concealing his sales of LAN stock, or when he failed to secure outside investment in iB3, or at some other time. Or even at *all* of these times, as the jury may have believed that Panos committed a series of frauds. But in the absence of specific findings, it is not proper for this Court to speculate what the jury found or when the fraud might have happened.

The jury's failure to allocate the damages award among the various causes of action prevents the application of issue preclusion in this case, because only those damages caused by the fraud are entitled to preclusive effect. *In re Henkel*, 490 B.R. at 782 (citing *Demerdjian v. Thompson (In re Thompson)*, 354 B.R. 174, 180 (Bankr. E.D. Tenn. 2006) ("Although the plaintiff has a claim for breach of contract,

only that portion of the damages proximately caused by the fraud is nondischargeable under § 523(a)(2)(A).")) "[W]here a jury finds liability on multiple claims, but only some claims meet the standard of nondischargeability provided in § 523(a)(2)(A), but where the jury does not allocate damages between counts, the entirety of the judgment is not nondischargeable without some finding regarding same." *Spagnuolo v. Brooke–Petit*, 506 B.R. 1, 7 (D. Mass. 2014); *see also PRN Funding LLC v. Cole (In re Cole)*, No. 14–60781, 2015 WL 6122078, at *8 (Bankr. N.D. Ohio Oct. 15, 2015) (holding that where a state court had found debtor guilty of fraud, breach of contract, and conversion but awarded damages in the aggregate, the amount of the judgment entitled to preclusive effect could not be determined). "[A] judgment that does not specifically explain the basis for the ... damage award ... lacks the necessary specificity to apply collateral estoppel." *Id.*

Here, the jury returned verdicts against Panos for indemnification, breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and unjust enrichment. But neither the jury nor the State Court specifically allocated any portion of the damages award directly to any one of the six causes of action. Nowhere in their Motion do the Plaintiffs explain how much, if any, of the damage award is attributable to Panos' fraud, nor is the Court able to determine what allocation was intended. As such, the State Court's decision lacks sufficient specificity to determine whether the issue was necessary to the final judgment. The doctrine of issue preclusion therefore does not apply.

Plaintiffs also posit that the failure to allocate damages between dischargeable and nondischargeable causes of action is no bar to the application of issue preclusion. "Where a plaintiff asserts multiple causes of action based on the same course of conduct by the defendant, such that the plaintiff's damages flow from the same course of conduct, the entire judgment is nondischargeable despite that some causes of action may be dischargeable absent the underlying fraudulent conduct." Reply, 2. Plaintiffs point to *In re Sarff* as an example of such an outcome. *Sarff* involved a state court judgment that awarded to the plaintiff compensatory damages of $20,789.79 for defendant's breach of the covenant not to compete, interference with business relationships, and misappropriation of trade secrets; $5,000 in punitive damages for the theft of assets and other overt acts; a $250 fine for violating an injunction; a $2,000 sanction for redacting information from discovery documents; and compensatory damages of $38,708.22 for the defendant's breach of the duty of loyalty. *Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 623 (6th Cir. B.A.P. 2000). The bankruptcy court held that the award of compensatory damages for breach of the duty of loyalty was dischargeable, but that the balance of the judgment was nondischargeable under 11 U.S.C. § 523(a)(6). The bankruptcy court reasoned that the plaintiff had not "met its burden of adequately connecting this award to actual damages suffered from Sarff's willful and malicious conduct." *Id.* at 628 (quoting *Sarff*, Slip Op. at 14).

On appeal, however, the bankruptcy appellate panel ("Panel") held that the "record establishes that the award of compensatory damages for the breach of duty of loyalty arose from the same actions as the other damage awards." *Id.* Those actions by the defendant included, among others, efforts to open a competing company while employed at Spring Works, the theft of springs and boxes from his employer, attempts to steer prospective and existing customers of Spring Works to his new venture, attempts to conceal evidence during discovery, and the repeated violation of

a certain injunction order. These actions, which gave rise to counts for breach of the covenant not to compete, interference with business relationships, and misappropriation of trade secrets, also support the count of breach of the duty of loyalty. The Panel considered the damages for breach of duty of loyalty to be a debt for willful and malicious injury to another entity or the property of another entity and therefore nondischargeable under § 523(a)(6); the Panel reversed that part of the bankruptcy court's order finding otherwise.

Plaintiffs read *Sarff* for the proposition that "when a judgment includes damages on a cause of action that may be dischargeable, but the facts supporting that judgment are the same that support damages on a nondischargeable cause of action, the entire judgment is nondischargeable because it is based on the same set of actions by the debtor." Reply, 3 n.1. Because the State Court Proceeding resulted in a verdict for fraud, Plaintiffs contend, the entire $2.7 million Judgment amount must be nondischargeable under § 523(a)(2)(A) because all damages stem from the same fraudulent actions by Panos. This reasoning fails in this case for two reasons.

First, Plaintiffs read the holding in *Sarff* too broadly. *Sarff* is not a case in which damages on a dischargeable cause of action were determined to be nondischargeable because they were predicated on the same facts as another nondischargeable cause of action. Instead, *Sarff* involves one set of actions taken by defendant, as partially recited above, that constituted willful and malicious injury to defendant's employer. Those same actions support several separate and distinct counts for breach of the covenant not to compete, interference with business relationships, misappropriation of trade secrets, and breach of the duty of loyalty. These counts, in turn, each give rise to separate compensatory damages awards, $20,789.79 for the first three counts and $38,708.22 for breach of the duty of loyalty. *Sarff*, 242 B.R. at 623. All of which, the Panel decided, was nondischargeable because it "arose from the same conduct which the state court found was willful and malicious." *Id.* at 622. That is, the $38,708.22 damages award for breach of duty of loyalty was nondischargeable not because it rests on the same facts as another nondischargeable cause of action, but because it is itself a debt for willful and malicious injury to another entity, and therefore exempted from discharge by § 523(a)(6).

Second, without more detailed findings of fact from the State Court, there is no way for this Court to conclude that all of the damages awarded does in fact stem from the same fraudulent actions. As discussed above, the jury could have determined that Panos' fraud was committed at any one or more of several different occasions; the damages resulting from that fraud may differ depending on when and under what circumstances it occurred. Plaintiffs may be absolutely correct in their assertion that every dollar of the damages award is directly attributable to the fraud committed by Panos ... or they might not. But the State Court Proceeding produced no factual findings from which that conclusion can be drawn, nor does the Judgment so state. This Court is unwilling to conclude that all damages awarded for indemnification, breach of contract, breach of fiduciary duty, negligent misrepresentations, and unjust enrichment arose from the same set of actions by Panos as those that support a finding of fraud, especially when there are no factual findings to illustrate that link. *See In re Cole*, 2015 WL 6122078, at *7 (Bankr. N.D. Ohio Oct. 15, 2015) ("[T]he state court judgment must make sufficiently detailed findings to support the application of collateral estoppel.").

Plaintiffs also argue, in the alternative, that despite the State Court's failure to allocate damages among the various causes of action, issue preclusion still applies to the jury's fraud verdict. That is, Plaintiffs are still entitled to summary judgment regarding Panos' fraud, and the only matter that may be relitigated is the amount of damages excepted from discharge. This is precisely the result reached by the court in *Cole*. In *Cole*, the bankruptcy court considered the issue preclusive effect of a state court judgment that found for the plaintiff on counts for fraud, breach of contract, and conversion but awarded damages as to all three counts in the aggregate. *In re Cole*, 2015 WL 6122078, at *1. The bankruptcy court determined that collateral estoppel applied to the state court fraud judgment, but because of a lack of specificity, the amount of the damages award entitled to preclusive effect could not be determined; the bankruptcy court therefore denied plaintiff's motion for summary judgment as to the amount of damages.

The Court believes that the Judgment in this case is too vague for issue preclusion to apply and prefers the reasoning in *Henkel*. In *Henkel*, the bankruptcy court determined, in part because the state court judgment at issue did not allocate a damages award between breach of contract and fraud, that plaintiff had "failed to establish that the issue of fraud was 'actually and directly litigated' in the State Court Action," and therefore issue preclusion did not apply to the state court judgment. *In re Henkel*, 490 B.R. at 783. When a state court awards damages on multiple counts, and no portion of those damages is directly allocated to any one of those multiple counts, one cannot conclude that any one of those counts is "necessary to the final judgment" as required by the third prong of the test for application of issue preclusion.

## VI. 11 U.S.C. § 523(a)(6)—Willful and Malicious Injury

 A debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge under the Bankruptcy Code. 11 U.S.C. § 523(a)(6).

Because the word "willful" in the statute modifies the word "injury," the United States Supreme Court has concluded that § 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "[T]he actor must intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S.Ct. 974 (citation omitted).

. . .

Willfulness is shown when it is demonstrated that the debtor either had a desire to cause the consequences of his act, or believed that injury was substantially certain to result from his conduct. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). *See also Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001). The focus is on the debtor's state of mind. Damages arising from conduct which is reckless or negligent do not fall within the purview of § 523(a)(6). *Kawaauhau*, 523 U.S. at 59, 118 S.Ct. 974.

. . .

The requirement of maliciousness is met when it is demonstrated that (1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action. *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228 (6th Cir. 1991); *Jercich*, 238 F.3d at 1209. "Under § 523(a)(6), a person is deemed to have acted maliciously when that person acts in conscious disregard of his duties or

without just cause or excuse." *Gonzalez [v. Moffitt (In re Moffitt)* ], 252 B.R. [916] at 923 [ (6th Cir. B.A.P. 2000) ] (citation omitted).

*Hoewischer v. White (In re White)*, 551 B.R. 814, 820–21 (Bankr. S.D. Ohio 2016).

■ Plaintiffs argue that "Panos' fraudulent conduct directed at the plaintiffs satisfies the willful and malicious injury standard." Motion, 17. "Because Panos knowingly made these false statements with the intent of misleading the Plaintiffs into relying on them, Panos not only committed an intentional act, but intended to cause injury and had no just cause or excuse." *Id.*

It appears Plaintiffs are attempting to use the jury's findings regarding fraud to satisfy the elements for willful and malicious injury under § 523(a)(6). As explained above, willfulness means the debtor either intended to cause harm or believed that harm was substantially certain to result from his conduct. Because Panos intended to deceive the Plaintiffs does not necessarily mean that he intended to injure the Plaintiffs, and the jury made no such finding.

Plaintiffs also contend that willful and malicious conduct can be inferred from the jury's award of punitive damages. According to the instructions provided to the jury by the State Court, punitive damages may be awarded if the jury finds

that the Plaintiff has met his or her burden to prove by clear and convincing evidence that the Defendant acted with malice or with aggravated or egregious fraud.

What do we mean by Malice? Malice means either A, that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge; or B, a conscious disregard for the rights and safety or others that has a great probability of causing substantial harm.

. . .

I have used the term aggravated or egregious fraud. Fraud is aggravated if it's accompanied by the existence of malice or ill will. Fraud is egregious if the fraudulent wrongdoing is particularly gross.

Motion, Exhibit Trial Transcript Volume VII, 864. The interrogatories do not indicate the specific basis upon which the jury awarded punitive damages, but it is clear that the standards given to the jury are different from the standards for willful and malicious injury spelled out in *White*. Drawing all inferences in favor of the non-moving party, it is possible that the jury may have awarded punitive damages because they believed Panos' acted with ill will. This standard is distinctly different from—and lower than—the standards by which bankruptcy courts evaluate a willful and malicious injury to determine dischargeability under § 523(a)(6). Thus, the issue in the present litigation is not same as the issue in the prior litigation, and the requirements of issue preclusion have not been satisfied.

In addition, the same deficiencies regarding the unallocated damages award already discussed with respect to § 523(a)(2)(A) exist with respect to § 523(a)(6). Even if this Court were to conclude that the jury's findings established that Panos' had caused a willful and malicious injury to the Plaintiffs, it would be impossible to determine how much of the damages award was attributable to that specific cause of action . . . and how much was therefore nondischargeable under § 523(a)(6).

## VII. 11 U.S.C. § 523(a)(19)—Common Law Fraud, Deceit, or Manipulation in Connection with the Purchase or Sale of Any Security

Section 523(a)(19) of the Bankruptcy Code provides, in relevant part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . .

(19) that—

(A) is for—

. . .

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was field, from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; [or]

. . .

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19).

Plaintiffs argue that they are entitled to summary judgment because the facts establishing a cause of action under § 523(a)(19) were already determined in the State Court Proceeding. "Plaintiffs established in the state court action that Panos committed common law fraud and deceived them.... In the state court action, the Plaintiffs proved that Panos fraudulently induced them to rely on his false statements by agreeing to sell their company, iBeam Solutions." Motion, 19.

Again, the absence of detailed findings of fact and the lack of specificity of the Final Judgment and the Interrogatories prove fatal to the application of issue preclusion in this case. The jury in the State Court Proceeding determined that Panos had committed fraud and returned Interrogatories so stating. But nothing in those Interrogatories, reproduced in their entirety above, indicates any connection to the purchase or sale of any security. Certainly the Plaintiffs presented substantial evidence from which the jury might have concluded that Panos fraudulently induced them to sell their company, but there is nothing to indicate that the jury actually reached that specific conclusion. As such, this Court cannot determine that the issues to be determined in the present litigation are identical to those determined in the prior litigation, and the doctrine of issue preclusion is inapplicable to the Plaintiffs cause of action under § 523(a)(19).

## VIII. Conclusion

For the forgoing reasons, the Court finds that the doctrine of issue preclusion does not apply to Plaintiffs causes of action under 11 U.S.C. § 523(a)(2)(A), (6), or (19), and therefore the Plaintiffs are not entitled to judgment as a matter of law. The Court is aware that this determination may visit upon the parties the added cost and inconvenience of duplicative litigation, while also subjecting the parties to the very real possibility of inconsistent results—both of which are burdens that the doctrine of issue preclusion is specifically intended to avoid. Nevertheless, the State Court Judgment cannot be afforded the issue preclusive effect that Plaintiffs seek. Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Summary Judgment (Doc. 54) is DENIED.

This matter will be set for a pre-trial conference by separate notice.

**IT IS SO ORDERED.**